IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TONYA MOORE,
   *Plaintiff,*

v.

HANGER PROSTHETICS & ORTHOTICS, INC., et al,
   *Defendants.*

Civil Action No.: ELH-11-02448

**MEMORANDUM OPINION**

Tonya Moore, plaintiff, has sued her former employer, Hanger Prosthetics & Orthotics, Inc. ("Hanger Prosthetics"), and its parent company, Hanger Orthopedic Group, Inc. ("Hanger Orthopedic"), defendants. First Amended Complaint And Jury Demand ("Complaint," ECF 5) ¶¶ 1-2. She has alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615; violation of the Maryland Fair Employment Practices Act, Md. Code (2009), State Gov't § 20-601 *et seq.*, and violations of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112, *et seq.*

Hanger Orthopedic has moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted. *See* "Defendant Hanger Orthopedic Group, Inc.'s Motion To Dismiss" ("Motion," ECF 13); "Defendant Hanger Orthopedic Group, Inc.'s Memorandum Of Reasoning And Authorities In Support Of Its Motion To Dismiss" ("Motion Memo," ECF 13-1).[1] It concedes that plaintiff was employed by Hanger Prosthetics. Motion at

---

[1] Hanger Orthopedic has submitted two exhibits: the "Affidavit of James T. Gillette" (ECF 13-3), Hanger Orthopedic's "regional director of human resources" at the time of plaintiff's employment, and a copy of Plaintiff's 2009 W-2 form (ECF 20-1).

1. But, Hanger Orthopedic contends that it "is not a proper party to this lawsuit because it was not the plaintiff's former employer." *Id.*

Plaintiff opposes the Motion. *See* "Plaintiff's Opposition To Defendant Hanger Orthopedic Group, Inc.'s Motion To Dismiss" ("Opposition, ECF 16").[2] She contends that Hanger Orthopedic was properly sued as an "integrated" or "joint" employer. Opposition at 2. Hanger Orthopedic filed a reply to the Opposition. *See* "Defendant Hanger Orthopedic Group, Inc.'s Reply Memorandum Of Reasoning And Authorities In Support Of Its Motion To Dismiss" ("Reply," ECF 20).

As the matter has been fully briefed, the Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

**Factual and Procedural Background**[3]

In her Complaint, plaintiff describes Hanger Orthotics as "a division of" Hanger Orthopedic. Complaint ¶ 2. In all other respects, she sets forth identical allegations as to both defendants. According to plaintiff, she began working "for Defendants" as a patient coordinator in August 2006. *Id.* ¶ 6. Moreover, she avers that, "[a]t all times pertinent," she "worked for Defendants at their facility in Baltimore City." *Id.* ¶ 4. As an employee "for Defendants," plaintiff received raises in 2007 and 2008. *Id.* ¶ 6.

---

[2] Plaintiff appended several exhibits to her Opposition. "Exhibit A" is a copy of Hanger Orthopedic's "New Hire Guide" (cover page only); "Exhibit B" is a copy of Hanger Orthopedic's 2010 Annual Report; "Exhibit C" consists of a series of "Leave of Absence Request and Approval Forms"; "Exhibit D" is a letter dated July 15, 2009, notifying plaintiff of her termination.

[3] The Court construes the facts alleged in the Complaint in the light most favorable to plaintiff, as the party opposing the motion. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

On May 14, 2008, plaintiff had surgery to repair a "ventral hernia." *Id.* ¶ 7. Plaintiff asserts that she used "pre-approved leave for the surgery and recuperation time." *Id.* She returned to work on or about June 25, 2008. *Id.*

In March or April of 2009, plaintiff's physician determined that plaintiff needed another surgery for the same condition. *Id.* ¶ 8. The surgery was scheduled for June 24, 2009. *Id.* Plaintiff requested leave on or about April 29, 2009; she expected to remain on leave from June 24, 2009 until August 5, 2009. *Id.* According to plaintiff, her request constituted "a request for leave to treat a serious health condition under the Family and Medical Leave Act . . . and . . . a request for a reasonable accommodation for her disability under the Americans with Disabilities Act . . . and the Maryland state analog of said Act." *Id.* ¶ 9. On May 18, 2009, plaintiff's request for leave from June 24, 2009 to August 5, 2009 was approved. *Id.* ¶ 12.

In the interim, on May 8, 2009, plaintiff received a "Final Written Warning" from Brian Luthy, "Practice Manager for Defendants' facility where she worked." *Id.* ¶ 10. That "warning" came approximately one week after plaintiff requested leave, and "made reference to administrative errors that Plaintiff had allegedly committed many months earlier back in 2008." *Id.* Plaintiff asserts that she was not responsible for those errors, and had never been disciplined for them prior to May 8, 2009. *Id.*

The warning from Mr. Luthy also referred to plaintiff's "absenteeism." *Id.* ¶ 11. Plaintiff asserts that on "the few days" on which she was absent, "she always presented Defendants with a doctor's note." *Id.* Further, she asserts that her absences were "due to health complications from her hernias and/or her diabetes." *Id.*

On or about July 15, 2009, while plaintiff was still recovering from surgery, she received a phone call from Linda Fowler, "Defendants' Area Administrative Manager." *Id*. ¶ 13. Ms. Fowler informed plaintiff that "she was being terminated." *Id.* Plaintiff maintains the termination was "without legitimate cause," and that the issuance of the warning and the termination constituted "unlawful actions in violation of state and federal law." *Id.* ¶ 15.

On March 4, 2010, plaintiff filed a Charge of Discrimination against defendants with the Equal Employment Opportunity Commission, which was cross-filed with the Maryland Commission on Human Relations. *Id.* ¶ 16. In the Charge, plaintiff alleged discrimination based on disability, as well as retaliation. *Id.* On or about May 28, 2011, plaintiff received a right to sue letter from the EEOC. *Id*. Plaintiff asserts that she has "satisfied all administrative prerequisites necessary for the bringing of this action." *Id.* ¶ 17.

As noted, plaintiff has brought claims under the FMLA. She asserts "Interference" (Count I), *id.* ¶¶ 18-24, and "Retaliation" (Count II). *Id.* ¶¶ 25-30. Plaintiff has also brought a claim under Md. Code., State Gov't §§ 20-601, *et seq*., which prohibits discrimination in employment (Count III). *Id.* ¶¶ 31-36. Plaintiff has also brought claims under the ADA for "Discrimination" (Count IV), *id.* ¶¶ 37-43, and also for "Retaliation" (Count V). *Id.* ¶¶ 44-49. She seeks compensatory damages, liquidated damages, punitive damages, back pay, "front pay in lieu of reinstatement," benefits, pre- and post-judgment interest, attorney's fees, and other costs.

### The Contentions

In its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Hanger Orthopedic maintains that it "is not a proper party to this lawsuit because it was not the plaintiff's former employer. Rather, the plaintiff was employed by the defendant, Hanger Prosthetics & Orthotics,

Inc." Motion at 1. According to Hanger Orthopedic, it "cannot have any liability for any alleged actions or inactions of the defendant, Hanger Prosthetics & Orthotics, Inc., or for the claims that [plaintiff] has made for her alleged wrongful termination." *Id.* at 2.

Hanger Orthopedic complains that plaintiff has merely alleged that Hanger Prosthetics is "a division" of Hanger Orthopedic, without setting forth any facts to establish that, as a parent corporation of Hanger Prosthetics, it is liable for the acts of its subsidiary. Motion Memo at 2 (quoting Complaint ¶ 2). Hanger Orthopedic posits that "plaintiff has plead [sic] no facts that would vitiate the benefits of limited liability and allow piercing of the corporate veil." *Id.* According to Hanger Orthopedic, it does not exercise "excessive control" over the subsidiary, and Hanger Prosthetics alone "hired and fired" plaintiff.[4] *Id.* at 3.

Plaintiff counters that Hanger Orthopedic was properly named as a defendant because Hanger Orthopedic and Hanger Prosthetics are "integrated" or "joint" employers. Opposition at 2. Plaintiff asserts: "Defendants' operations are interrelated and they exhibit a significant degree of common ownership and control." *Id.* at 7. Ms. Moore includes many factual allegations to support her contention that Hanger Orthopedic and Hanger Prosthetics are "integrated" or "joint"

---

[4] James Gillette, regional director of human resources for Hanger Orthopedic, avers in his Affidavit:

> The plaintiff was not employed by the defendant, Hanger Orthopedic Group, Inc. Rather, the plaintiff worked for the defendant, Hanger Prosthetics & Orthotics, Inc., until she was terminated by it for cause for her continued unsatisfactory performance and failure to cure that unsatisfactory performance after written warning.

However, I must construe the facts in the light most favorable to plaintiff. *Philips*, 572 F.3d at 180. Although I may, as discussed *infra*, consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic," the Affidavit is not integral to the Complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Therefore, it will not be considered in resolving the Motion.

employers, although they are not included in her Complaint.[5] As an alternative to dismissal, plaintiff contends that she is entitled to discovery regarding the question of joint employment, or "at a minimum," "the opportunity to amend her Complaint to include more specific allegations regarding the degree of control Defendant Hanger Orthopedic has over Defendant Hanger Prosthetics." *Id.* at 10.

As noted, plaintiff includes in her opposition many factual allegations outside the Complaint.[6] For example, plaintiff asserts that Hanger Orthopedic "has centralized control over labor relations" and, together with Hanger Prosthetics, "ha[s] authority over employees, like Plaintiff, who worked in the patient care centers." *Id.* at 4. Plaintiff continues: "Hanger Orthopedic determines personnel policies and employee benefits, including health benefits, flexible spending plans, retirement benefits, life insurance, disability insurance, paid vacation, paid/floating holidays, paid sick leave and bereavement leave." *Id.* Plaintiff also notes that "[s]ome [Hanger Prosthetics] employees are even offered stock-based compensation . . . [via] stock in Hanger Orthopedic . . .." *Id.* n. 3. Further, plaintiff claims that the Executive Vice President of Hanger Orthopedic is also President and Chief Operating Officer of Hanger Prosthetics. *Id.* at 7.

---

[5] In its Reply, at 1, Hanger Orthopedic urges the Court to disregard the additional factual allegations made by plaintiff in her Opposition, as "[t]he plaintiff's opposition cannot cure defective pleadings." However, Hanger Orthopedic did not respond to plaintiff's request for discovery or for leave to amend.

[6] The additional allegations and exhibits plaintiff puts forth in her responsive pleading are set forth for completeness, but will not be considered in resolving the Motion; plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997).

In addition, plaintiff observes that Hanger Orthopedic has "established an intranet system which allows . . . employees to access their 'Hanger e-mail,' payroll forms, employer calendars, the electronic time card system known as 'Hanger Time,' and links to information concerning employee benefits, important contacts, an electronic version of the employee handbook, and an employee self-service portal." *Id.* at 5. Plaintiff asserts that Hanger Orthopedic claims to have employed 4,273 employees in 2010, a number which plaintiff asserts includes employees, like plaintiff, working at patient-care centers. *Id.* She also notes that 87.5% of Hanger Orthopedic's 2010 net income was "attributable to patient care services." *Id*. at 7. And, she argues that Hanger Orthopedic and Hanger Prosthetics "us[e] the same work force and business offices," *id.* at 8, with Hanger Orthopedic operating patient care centers like Hanger Prosthetics and employing the people who work at those centers, such as plaintiff. *Id*. Further, plaintiff notes that Hanger Orthopedic "paid the rent" on the patient care centers. *Id*. at 9. Plaintiff also points out that the "New Hire Guide," or employee handbook, that she was given has the logo of Hanger Orthopedic on the front cover, and that all of her correspondence from Hanger Prosthetics was written on paper with the Hanger Orthopedic letterhead, including the letter confirming her termination. *Id*. at 6.

**Standard of Review**

Under FED. R. CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But,

the Rule demands more than bald accusations or mere speculation. *Id.* Thus, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.*

To satisfy the minimal requirements of Rule 8(a)(2), however, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556. Thus, where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) (citation omitted).

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). Both *Twombly*, 550 U.S. 544, and *Iqbal*, 129 S. Ct. 1937, make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

A motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231,

243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). Of import here, when deciding a motion to dismiss pursuant to Rule 12(b)(6), the court considers the complaint, as well as documents attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic . . . ." *Id.* (citation omitted)); *accord Philips*, 572 F.3d at 180.

## Discussion

"A parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978, 980 (4th Cir. 1987). At this juncture, the record does not permit the Court to determine whether Hanger Orthopedic, as the parent company, is responsible for the actions of its subsidiary, Hanger Prosthetics.

In her Complaint, which must be construed in the light most favorable to plaintiff, *Philips*, 572 F.3d at 180, Moore does not include particulars as to either Hanger Prosthetics or Hanger Orthopedic. Rather, plaintiff asserts that Hanger Prosthetics "is a division of Defendant Hanger Orthopedic Group, Inc." Complaint ¶ 2. Moreover, she asserts repeatedly that she "worked for [both] Defendants . . . ." *Id.* ¶ 4; *see also id.* ¶ 6 ("Plaintiff . . . began working for Defendants . . ."); *id.* ¶ 7 ("she returned to work for Defendants . . ."); *id.* ¶ 8 ("Plaintiff

9

submitted to Defendants the requisite form to request leave . . ."); *id.* ¶ 11 ("[Plaintiff] always presented Defendants with a doctor's note . . ."); *id.* ¶ 12 ("Defendants formally approved Plaintiff's request for leave . . ."); *id.* ¶ 13 (plaintiff was called by Linda Fowler, "Defendants' Area Administrative Manager"); ¶ 15 (the actions taken by Defendants . . .").

The allegations are identical as to both defendants. Plaintiff avers that she worked for both companies, and it is only by going beyond the face of the Complaint that the parent-subsidiary issue surfaces. If the allegations are facially adequate as to Hanger Prosthetics, they are also adequate as to Hanger Orthopedic.

"[T]he integrated employer test entails a fact-intensive inquiry and, therefore, is ordinarily inappropriate for resolution at the motion to dismiss stage." *Tasciyan v. Medical Numerics*, No. 11–1467, 2011 WL 5119465, at *5 (D. Md. Oct. 28, 2011) ("In other words, without some discovery, [plaintiff] would not have a meaningful opportunity to satisfy the elements of the integrated employer test."). *See also Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F.Supp.2d 448 (D. Md. 1999) ("Here, on a motion to dismiss and prior to discovery, there is not enough evidence in the record to determine whether [defendant] is an 'employer' under the integrated enterprise analysis . . . .").

The parties ask the Court to consider evidence beyond the Complaint, in the form of multiple exhibits. I cannot consider these documents when ruling on a motion to dismiss pursuant to Rule 12(b)(6), however. *See Trimble Navigation Ltd.*, 484 F.3d at 705 (the Court may consider documents "attached to the motion to dismiss, so long as they are **integral to the complaint and authentic** . . . ." (emphasis added); *Zachair Ltd.*, 965 F. Supp. at 748 n. 4 (a

plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.").

**Conclusion**

The issue raised by defendant concerning joint employment was based solely on documents outside the complaint, which cannot be considered at this juncture. To rule as defendant suggests, without the benefit of discovery, would require me to make a potentially dispositive factual determination on the basis of an incomplete record.

To be sure, plaintiff's Complaint is a bit skeletal as to both defendants. But, if it is sufficient to sustain a claim against Hanger Prosthetics, then it is equally sufficient as to Hanger Orthopedic, because plaintiff alleges that she worked for both defendants. Although plaintiff asserts that Hanger Prosthetics is a division of Hanger Orthopedic, this does not compel, on its face, the conclusion that Hanger Orthopedic was not a co-employer for the purpose of her claims. *See, e.g., Yeibyo v. E-Park of DC, Inc.*, No. 07-1919, 2008 WL 182502, at *6 (D. Md. Jan. 18, 2008) (stating, in denying defendants' motion to dismiss: "Defendants challenge the sufficiency of Plaintiffs' pleadings as to whether Defendants constitute a 'joint employer' . . . . Defendants' arguments fail on this front . . . because on a . . . motion to dismiss, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Plaintiffs have alleged that '[defendants] share . . . key personnel' and that Plaintiffs worked for [defendants] simultaneously."). Therefore, I will deny Hanger Orthopedic's Motion,

without prejudice to the right of Hanger Orthopedic to renew its contention at a later time.[7] A separate Order follows.

Date: November 21, 2011  /s/_____
Ellen Lipton Hollander
United States District Judge

---

[7] I express no opinion as to whether plaintiff will be able to sustain a claim against Hanger Orthopedic, given the "strong presumption" against attributing the conduct of a subsidiary to a parent company, as articulated in *Johnson*, and the difficulty in designating a parent as a "joint" or "integrated" employer. *See, e.g., Allen v. Bank of America Corp.*, 11–33, 2011 WL 3654451, at *4 (D. Md. Aug. 18, 2011) (granting defendant parent company's motion to dismiss because plaintiff's assertion that the subsidiary identifies itself as the parent in its correspondence, and represents itself to customers as the parent, "does not show that [the subsidiary] lacks separate corporate interests and functions solely to achieve [the parent's] purposes."); *Hollensteiner v. Waterfield Group*, 10–00200, 2010 WL 6816441, at *6 (D. Md. June 27, 2010) (stating, in declining to utilize the federal integrated-employer concept for the interpretation of Maryland statutes: "[T]he principles that undergird the integrated-employer test are in serious tension with fundamental principles of Maryland corporate law. Specifically, federal courts treat the integrated-employer doctrine as an exception to the general rule that shareholders (including parent corporations that own a subsidiary corporation) are not liable for the wrongful actions of the corporations in which they own shares. In the language of corporate law, the integrated-employer doctrine, when it applies, provides a rationale for piercing the corporate veil . . . 'Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil.'") (citation omitted).